FOURNET, Justice.
 

 The Louisiana highway commission, on July 7, 1931, entered into a contract with Royce ICershaw, Inc., to construct Louisiana project No. G803, and, in compliance with the provisions of the contract and the requirements of law, the contractor furnished bond, with the Union Indemnity as surety. Subsequently, Royce Kershaw, Inc., assigned the contract in its entirety to Thomas G. Womack, who, under the terms, conditions, and considerations of the assignment, assumed The entire obligations of Royce Kershaw, Inc.,
 
 *842
 
 and furnished bond for the sum of $15,000, with the Globe Indemnity Company as surety.
 

 Under the provisions of Act No. 224 of 1918, as amended by Act. No. 271 of. 1926, W. E. Bickham, in order to recover on his claim for certain materials furnished in the construction of the project aforesaid, instituted this concursus proceeding, making parties thereto the Louisiana highway commission, Union Indemnity Company, the Globe Indemnity Company, and the parties whose claims against the project were filed of record. It later developed that other claims were timely filed, and these claimants -intervened.
 

 The case was tried and judgment rendered, allowing certain claims and rejecting others. The Globe Indemnity Company, Thomas G. Womack, and the Pan-American Petroleum Company have appealed.
 

 The Standard Oil Company of Louisiana filed a motion in this court, seeking to have us remand the case to the district court of Washington parish under our supervisory powers conferred by section 10, art. 7, of the Constitution of 1921, in order to permit it to intervene herein and assert and establish its claim. In the motion it is alleged that its lien was filed about a week after the concursus proceeding was instituted, and it did not know of the existence of the case until it was pending on appeal before this court.
 

 It is obvious that to grant the motion would be to delay the final termination of this case for an indefinite period of time. Article 391 of the Code of Practice declares that an intervention may be filed provided it d'oes not retard the principal suit. We must therefore refuse the motion of the Standard Oil Company.
 

 We shall now consider the appeal of each appellant separately and begin with that of the Globe Indemnity Company. This company filed exceptions of lis pendens, prematurity, misjoinder of parties defendant, misjoinder of asserted causes of action and of no right or cause of action to the claims of all parties. The judge of the trial court, in a thorough and well-written opinion, overruled the exceptions. The Globe Indemnity is only pressing the exception of no cause or right of action before -this court. The basis of the exception is that the bond executed by the Globe Indemnity Company as Thomas G. Womack’s surety is a conventional one, and that .Royce Kershaw, Inc., is the only party who had any right to sue on the bond. Its counsel rely on the cases of Salmen Brick & Lumber Co. v. Le Sassier et al., 106 La. 3S9, 31 So. 7; Hughes v. Smith et al., 114 La. 297, 38 So. 175; LHote Lumber Mfg. Co. v. Dugue et al., 115 La. 669, 39 So. 803; and State v. C. S. Jackson & Co. et al., 137 La. 931, 69 So. 751.
 

 In passing on the exception of no cause or right of action, the trial judge considered the authorities cited by counsel, and held that they were not controlling in the case at fiar. Erom an examination of these cases, we agree with the learned district judge in his ruling. These decisions were rendered -prior to the adoption of the present public, and private works acts, and, until the passage of those acts, there was no provision in our laws giving laborers, materialmen, and furnishers of supplies the right to bring a direct' action on the bond against the surety. Such right of action was only in favor of the named o-bli
 
 *844
 
 goe in such bonds, which were purely statutory. It therefore becomes necessary for us to analyze the nature and provisions of the bond, in question.
 

 In this case Royce Kershaw, Inc., assigned to Thomas G. Womack its entire contract. To make this assignment to Womack complete, it would have been necessary for the Louisiana highway commission to have accepted the transfer and substituted Womack as contractor, but this was not done. Therefore Womack had the legal status of a subcontractor. A subcontractor is not required to give bond under the requirements of law. Act No. 224 of 191S, as amended. It necessarily follows that the bond given by Womack is not a statutory bond. The bond was given in conformity to, and in accordance with, the provisions of the contract of assignment, and must be construed as a conventional bond.
 

 The bond is made in favor of. Royce Kershaw, Inc., contractor, and is conditioned on Womack faithfully performing all the obligations assumed by him in the contract of assignment, wherein he (Womack) agreed to take over and perform the contract between the obligee (Royce Kershaw, Inc.) and the Louisiana highway commission for the construction of project 6S03, and to faithfully and promptly pay the wages of laborers and the claims of furnishers of materials and supplies and to promptly effect the cancellation of any liens filed against the project. It also contains the following paragraph:
 

 “It is expressly understood and stipulated by and between the parties to this bond that the same is given in accordance with Act 298 of 1926 of the General Assembly of Louisiana.”
 

 In construing the meaning and effect of this language, the judge of the lower court properly said:
 

 “If the bond given by the Globe Indemnity Company is to be construed as enuring in favor of the furnishers of material here such construction must arise from the evident intention of the parties to the bond. The bond states that it is given in accordance with Act 298 of 1926. This is the law for private building contracts. If the parties contracted in the bond with reference to this law and intended to become bound by its provisions, they intended to give the laborers and furnishers of material a direct action on the bond as the law with reference to which gives the laborers and furnishers of material such right. If the reference is an error and the parties intended to refer to Act 224 of 1918 as amended by Act 271 of 1926, the same situation would exist as this law also gives the right to the laborers and material-men of a direct action on the bond. The reference to a law under which the parties intended to be bound must be given some effect, and it, must be assumed that one or the other of the acts mentioned must be the one referred to as there are no other acts that could reasonably have any application to the subject matter about which the parties were contracting.”
 

 He concluded that “the bond was intended to protect the laborers and furnishers of material and inures to their benefit and gives them a right of action thereon.”
 

 Article 3039 of the Revised Civil Code provides that:
 

 ■ “Suretyship can not be presumed; it ought to be expressed, and is to be restrained with
 
 *846
 
 in the limits
 
 intended
 
 by the contract.” (Italics ours.)
 

 The parties to the bond, in writing the clause in controversy, evidently
 
 intended
 
 to give effect thereto. To say otherwise would be saying that they intentionally did a vain and useless thing. Hence this clause in the bond in question must be given some meaning if it is reasonable and fair to do so.
 

 Our Civil Code declares: “When a clause is susceptible of two interpretations, it must be understood in that in which it may have some effect, rather than in a sense which would render it nugatory.” Rev. Civ. Code, art. 1951. '
 

 We find the following pertinent language in the case of Miller v. Bonner, 163 La. 332, 111 So. 776, 780:
 

 “There is no provision in Act 49 of 1910 requiring a subcontractor to give bond to a contractor. The bond in question, therefore, is conventional and not statutory, and its provisions, as written therein, necessarily constitute the law of the case between the parties,
 
 when considered in connection with the contract of Bonner.”
 

 In the case of Lichtentag v. Feitel et al., 113 La. 931, at page 939, 37 So. 880, 883, this court made the following observation:
 

 “It seems hardly necessary to say that the contract and specifications contemplate that the contractor shall furnish all the necessary labor and material at his own expense, and hence that, although he may have finished the work,
 
 the contract is not complied with if he has left the owner to pay for suoh labor and materials, or any part of it.
 
 [Italics ours.]”
 

 It is our opinion that it was the intention of the parties to give the laborers, materialmen, and furnishers of supplies, who respectively performed work on, and whose materials were actually used in, the construction of the project, a right and cause of action against the surety on Womack’s bond in the event of his failure to pay them.
 

 ' The Globe Indemnity Company pleaded in the court below and urges the same plea in this court that, since the Louisiana highway commission undertook to pay Womack with “script or certificates of indebtedness” instead of cash, it was discharged as surety on T. G. Womack’s bond by virtue of such change in the method and medium of payment. Counsel rely on two Louisiana decisions, Landry et al. v. Peytavin et al., 7 Mart. (N. S.) 165, and Police Jury v. United States Fidelity & Guaranty Co., 171 La. 237, 130 So. 341. In our opinion, these cases are not applicable to the facts of the case at bar.
 

 In the case of Victoria Lumber Co. v. Wells et al., 139 La. 500, 71 So. 781, 783, L. R. A. 1916E, 1110, Ann. Cas. 1917E, 1083, this court said:
 

 “Under the law and present conditions, which give to materialmen, mechanics, and laborers on buildings security for their goods and wages, with bonds by
 
 compensated
 
 sureties, or insurers, to protect them, it is obviously unjust and unlawful to apply the rules of law concerning voluntary surety-ships.” (Italics ours.)
 

 In the body of this opinion, the court cited numerous decisions wherein a similar rule of construction was applied by the courts, and particularly quotes with approval from
 
 *848
 
 the case of U. S. Fidelity & Guaranty Co. v. United States, 191 U. S. 416, 24 S. Ct. 142, 48 L. Ed. 242, as follows:
 

 “The very reason for the existence of this kind of corporations, and the strongest argument put forward
 
 by
 
 them for patronage, is that the embarrassment and hardship growing out of individual suretyship that give application for this rule is by them taken away; that it is their business to take risks and expect losses.
 
 If, with their superior means and facilities, they are to be permitted to take the risks, but avoid the losses, by the rule of striatissimi juris, we mcuy expect the courts to be constantly engaged in hearing their technical objections to contracts prepared by themselves.
 
 It is right, therefore, to say to them -that they must show injury done to them before they can ask to be relieved from contracts which they clamor to execute.” (Italics ours.)
 

 We are therefore of the opinion that the change or method of payment by the Louisiana highway commission to the contractor did not release or discharge the surety from its obligations to the laborers, materialmen, and furnishers of supplies.
 

 The Globe Indemnity Company filed a plea of estoppel, based on the fact that the Louisiana highway commission, while this litigation was pending, executed and recorded an acceptance of the work on project 6803, citing in support of its contention the cases of Watson v. Succession of Barber, 105 La. 456, 29 So. 949, and Warren v. Shealy, 83 S. C. 113, 65 S. E. 1.
 

 The document referred to reads as follows:
 

 “Baton Rouge, La.
 

 “April 4,1933.
 

 “Bond Project 6803, Route #34, length 11.95 miles surface treatment.
 

 “To Whom it May Concern:
 

 “This is to certify that work known as (Bond) Project 6803, Franklinton-Miss. State Line Highway, Washington Parish, covered by contract between the Louisiana Highway Commission and Royce Kershaw, Inc., which contract was placed in default by the Louisiana Highway Commission on November 25, 1932, and notice of default recorded in Mortgage Book #48, Page 38, records of Washington Parish, on December 2, 1932, has been finally accepted by the Commission on April 3, 1933.
 

 “Louisiana Highway Commission,
 

 “By J. A. Kinkead, Office Engineer.”
 

 The trial judge permitted the filing of the plea of estoppel and referred it to the merits of the case.
 

 A careful reading of the evidence conclusively shows that the contractor was placed in default and notice thereof properly recorded in the mortgage records of Washington parish, and that the project was not completed, which clearly shows that the recordation of the document was intended as an acceptance of the work in so far as it had been completed. We will not permit a surety to take advantage of a statement made through error, when it is not shown that it thereby suffered injury.
 

 Thomas G. Womack and the Globe Indemnity Company, his surety, alleged in their answer and reconventional demand that the Louisiana highway commission breached its contract entered into with Royce Kershaw,
 
 *850
 
 Inc., and asked for damages against the commission aggregating the sum of $58,062.25. Objection was timely made by counsel for the Louisiana highway commission to the admission of any evidence in support of this re-conventional demand, on the ground that the contract between it and Boyce Kershaw, Inc., contained a provision prohibiting the assignment-or subletting of the contract without the written consent of the state highway engineer and, in the absence of such a written consent or agreement, contended that Womack had no right to sue for damages for the alleged violation of the contract.
 

 Counsel cite the ease of Carruth v. Port Hudson Oil Developing Co., Inc. et al., 159 La. 236, 105 So. 302, 303, in support of their position. In that case the agent sued as such and not in his own behalf, as was done by Womack in this proceeding. Therefore the ease is not authority in support of Womack’s contention, and necessarily the Globe Indemnity Company’s claim must stand or fall with his.
 

 In the judgment of the lower court, the trial judge commented on this subject as follows:
 

 “The court thought it best at the time to admit testimony
 
 on the reeonventional demand
 
 in order to make up the record, but the testimony was admitted subject to the objection. After further consideration of the matter, I
 
 am of the opinion
 
 that the objection should have been sustained
 
 and the testimony excluded.”
 
 (Italics ours.)
 

 We are of the opinion that the court is correct in its statement, after reading the evidence, which was well and fully summed up by the trial judge as follows:
 

 “It is also contended by Womack that the Commission is estopped by its conduct from urging against him this provision of the contract as the Cbmmission knew that Womack was doing all the work under the contract in his individual capacity and received payments directly from the Commission under a power of attorney from Boyce Kershaw, Inc. On the contrary, the record shows that the commission dealt with Womack at all times as agent of Boyce Kershaw, Inc. and never as subcontractor or assignee. The commission never received any copy of the assignment of the contract to Womack and in fact both Womack and the Commission in all the correspondence and other transactions with reference to the work treated Womack in no other light than as agent of Boyce Kershaw, Inc.”
 

 It is contended by counsel for the Globe Indemnity Company that the judgment of the lower court, holding that Anderson & Tynes are entitled to share in the retained percentage and to hold the surety liable, is erroneous under the authority of J. Watts Kearny
 
 &
 
 Sons v. Perry et al., 174 La. 411, 141 So. 13. We are of the opinion that the trial court, in passing on the merits of this claim, correctly stated the facts and applied the law in the following language:
 

 “Objection is made to the allowance of this claim on the ground that these claimants are neither furnishers of material to a contractor or subcontractor, nor are they themselves subcontractors. The case of J. Watts Kearny & Sons v. Perry et al., 174 La. 411, 141 So. 13, is cited in support of that objection. The facts in this case are different from the cited case. In that case Kearny
 
 &
 
 Sons furnished gravel to the Weaver Sand Co.,
 
 *852
 
 Inc. which company in turn sold it to Perry. It was held that there was no privity of contract between Kearny and Sons and the contractor, Perry. But in this ease these claimants furnished the gravel directly to Womack under a contract with him, and therefore they are no creditors of a creditor of Womack but are creditors of Womack the same as the Weaver Sand Co., Inc. was of Perry in the cited case. The claim will be allowed in the amount stated with legal interest from April 7th, 1932, and 10% attorneys fees on the amount due.”
 

 In discussing the claim of the Great Southern Lumber Company, counsel for the Globe Indemnity Company contend “that an unqualified and unrestricted personal judgment should have been rendered in favor of this claimant and against the Commission, and the entire retained percentage should have been allocated prorata to the other successful claimants,” because, subsequent to the recordation of the Great Southern Lumber Company’s claim against project 6803, the Louisiana highway commission made payments to the contractor, without first deducting the amount of the claim. They base this contention on the provisions of section 2 of Act No. 224 of 1918, as amended by Act No. 271 of 1926, which reads as follows:
 

 “That any person, firm or corporation, association of persons or partnérship to whom any money shall be due on account of having done any work, performed any labor on, or furnished any material in the construction, erection, alteration or repair of any such building, road, work or improvement, or any person, firm, corporation, association of persons or partnership to whom any money shall be due on account of having furnished material or supplies for use in any machine used in the construction, erection, alteration or repair of any such building, road, street or other work of improvement, may file with the said authority having the said work done, and record in the office of the Recorder of Mortgages for the parish in which the said work is being done, any time after the maturity of his claim, a sworn statement of the amount due him,
 
 and any payments made thereafter by said authority without deducting the amount of the claims so served on it, shall malee said authority liable for the amount of such claim."
 
 (Italics ours.)
 

 There can be no question as to the liability of the Louisiana highway commission to the Great Southern Lumber Company for the amount of its claim, but can we deprive this claimant of its right to participate in the retained percentage due the. contractor?
 

 This court said, in the case of Fidelity Homestead Association v. Kennedy & Anderson, 158 La. 1059, 105 So. 64, 66, that “as long as the money remains in the hands of the owner any furnisher has a right to file his account and to participate in the common fund,” and finally decided the matter in controversy in the following words (158 La. 1059, at page 1065, 105 So. 66):
 

 “The manifest purpose of the act is, therefore, that all such claims shall be tried, and, of course, disposed of, at one time and not in a series of judgments between individual and individual. It is true that section 2 of the Act of 1916 reserves to every claimant an individual right of action on the bond; but this has nothing to do with his right to as
 
 *854
 
 sert his claim in the eoncursus when called ,in. But whether or not Roberts & Co. and Stauffer Eshleman & Co. have any rights against the surety is a matter to which she will revert later on.
 
 Suffice it to say, for the present, that they should have been allowed to participate in the distribution of the fund in court."
 
 (Italics ours.)
 

 We find from the record that the Great Southern Lumber Company, in its answer and reconventional demand, specifically demanded a judgment against Royce Kershaw, Inc., Union Indemnity Company and' its Receivers, the Louisiana highway commission, the Globe Indemnity Company, and Thomas G. Womack, in solido, for the full amount of its claim, and, moreover, asked that “said judgment be credited protanto with whatever amount respondent Great Southern Lumber Company, may recover as its prorata share out of any monies due by the Louisiana Highway Commission to the said Royce Kershaw, Inc., as a balance of the said contract price. * 4c * J>
 

 We are of the opinion that, while the Louisiana highway commission is personally liable for the amount of the Great Southern Lumber Company’s claim, nevertheless that fact does not defeat or deprive it (Great Southern Lumber Company) of its right to assert its claim in the eoncursus proceedings and to participate in the common fund.
 

 We will now consider the claim of the Pan-American Petroleum Corporation. This claimant asked for judgment in the sum of $3,459.26, with legal interest from January 1, 1932, and 10 per cent, attorneys fees, and now complains because the district judge only allowed $1,759.96, upon a finding that it had received, as a
 
 payment on
 
 account, script, or a certificate of indebtedness issued by the Louisiana highway commission in the sum of $1,788.74 (which this appellant asserts it took as collateral security only), and that the amount of this warrant should be deducted from the amount claimed.
 

 The trial judge found that this certificate of indebtedness was sent to, and accepted by, the claimant as an absolute payment of the full amount then, due it, or $1,788.74, and thereafter a document was confected between them indicating that the warrant was to be treated as collateral security only. Womack always considered that part of the account settled and so carried it on his books. We are of the opinion that the record supports the judge’s finding.
 

 While we are of the opinion that the creditor and debtor as between themselves can change the status and effect of a payment which has been made, however, it cannot be done to the prejudice of the rights of third parties. McElrath v. Dupuy, 2 La. Ann. 520; Boagni v. Wartelle, 50 La. Ann. 128, 23 So. 206; Reusch
 
 &
 
 Co. v. Keenan & Slawson et al., 42 La. Ann. 419, 7 So. 589; 50 C. J. 107; U. S. v. Brent et al. (D. C.) 236F. 771; Columbia Digger Co. v. Rector (D. C.) 215 F. 618; 21 R. C. L. 93.
 

 Appellant, having failed to recover the entire amount it claimed, is not entitled to any attorneys’ fees. Act No. 224 of 1918, as amended.
 

 The next point before us for consideration is whether or not the judgment of the lower court is erroneous because it did not hold the Louisiana highway commission li
 
 *856
 
 able for the entire amount clue claimant (Pan-American Petroleum Corporation) on account of the insolvency of the Union Indemnity Company, the surety on the bond, of the contractor, Royee Kershaw, Inc., at the time this proceeding was provoked. This liability is claimed under the provisions of section 6 of Act No. 22-4 of 1918, which reads as follows:
 

 “That if no objections are made by any claimant to the solvency or sufficiency of the bond, the said authorities shall, ten days after the service of judicial notice on each claimant having recorded claims as aforesaid, of the said concursus proceeding, obtain from the Clerk a certificate to that effect, and the said certificate shall relieve the said authorities of any personal liability, and the Recorder of Mortgages shall cancel all claims recorded as aforesaid; if objections are made to the solvency or sufficiency of the bond, they shall be tried summarily, and if the surety is found to be not solvent, or sufficient to cover the full amount for which he is'bound, or if the said authorities fail to exact bond, or fail to record same within the time prescribed by law, the said authorities shall be in default and shall be liable to the same extent as the surety would have been. The surety on the bond shall be limited to such defenses only as the principal on the bond.”
 

 Plaintiff, Biekham, who instituted this proceeding, objected to the solvency of the surety on the bond within the time prescribed by the act. In the case of Tyler v. Merrill Engineering Co. et al., 159 So. 319, decided by this court on January 7, 1935, we held that the objection by any claimant to the solvency of the surety inured to the benefit of all creditors whose claims come within the provisions of the act.
 

 Por the reasons assigned, it is ordered that the judgment of the lower court be amended by granting judgment in favor of the Pan-American Petroleum Corporation in the sum of $1,759.96 against Royce Kershaw, Inc.,, in rem, and against Thomas G. Womack, the-receivers of the Union Indemnity Company, the Louisiana highway commission, and the Globe Indemnity Company, in solido, subject, to the maximum liability of the Globe Indemnity Company in the sum of $15,000, exclusive of interest and costs, after crediting said claim with the pro rata share to be-applied thereon out of the retained percentage-in the possession of the Louisiana highway commission on project 6803, and, as thus-amended, the judgment of the lower court is-affirmed.